JANUARY TERM, 1882, No. 226. APRIL 4TH, 1882.

# Castor's Appeal.

1. The official bond of one appointed receiver of taxes for the Twenty-third Ward of the City of Philadelphia provided, that, if he should faithfully perform the duties of his office " for the official‘term for which he was elected as aforesaid, or for any term or terms for which he may thereafter be reëlected to said office, so long as he continues in said office during said original or any subsequent term or terms, then this obligation to be void, otherwise to remain in full force and virtue." At the end of the term for which this bond was given, the principal obligor was appointed to the same office for another term, and entered into a new bond of the same form, with different sureties. During the latter term he made default to an amount greater than that of the bond given for that term. *Held*, that the sureties on the bond given for the earlier term were liable.

2. The acceptance by the city of the new bond and sureties could not have the effect of discharging the sureties on the old bond.

3. Waters's Appeal, 10 W. N. C., 146, followed.

Before SHARSWOOD, C. J.; MERCUR, GORDON, TRUNKEY, and GREEN, JJ. STERRETT, J., absent.

Appeal of Peter Castor from the decree of the Court of Common Pleas, No. 4, for *Philadelphia County*, confirming the report of an auditor appointed to distribute a fund in court, arising from the payment into court of the principal of a ground rent owned by the appellant.

The fund in court was $1669.34, which was referred to W. Herbert Washington as auditor to distribute. The auditor reported the material facts as follows:

Benjamin Shallcross was duly appointed receiver of taxes for the Twenty-third Ward of the City of Philadelphia for three successive terms. The first term was from January 27th, 1873, to January 24th, 1875. He gave an official bond with warrant of attorney in the sum of $10,000 for the faithful performance of his duties, with Charles Waters and George M. Shallcross as sureties. Judgment was entered, but the lien had expired.

The second term was from January 25th, 1875, to January 28th, 1877. For this term he gave his bond and warrant of attorney in the sum of $10,000, with Robert W. Shallcross and Peter Castor as sureties. Judgment was entered on it March 10th, 1875, and it became a lien upon the ground rent owned by Castor, the principal of which was in court for distribution.

The third term was from January 29th, 1877, to January 27th, 1879. For this term he gave his bond with warrant of attorney for $10,000, with Charles Waters and George M. Shallcross as sureties. Judgment was entered on it February 23d, 1877.

The warrant of attorney accompanying each bond. provided, *inter alia:* " That if the above bounden Benjamin Shallcross shall and will faithfully perform the duties of the office of receiver of taxes, Twenty-third Ward, to which he was appointed by the receiver of taxes of Philadelphia, on the twenty-third day of January, 187–, as the same are defined by law or the ordinances of councils of Philadelphia, or otherwise, or as the same may be hereafter defined, for the official term for which he was elected as aforesaid, *or for any term or terms for which he may thereafter be reëlected to said office so long as he continues in said office during said original or any subsequent term or terms, then* this obligation to be void, otherwise to remain in full force and virtue."

Benjamin Shallcross became a defaulter to the extent of over $30,000, and the first known default occurred February 25th, 1878, during his third term.

April 23d, 1879, the city issued a *fi. fa.* on the judgment upon the bond for the last term, and the sureties upon that bond paid to the city $10,000. June 17th, 1879, under a *vend. ex.* upon an *alias fi. fa.*, real estate of Benjamin Shallcross was sold for $12,000, and from this amount there was paid to the city upon its judgment of March 10th, 1875, the sum of $9356.90. (See Waters's Appeal, 10 W. N. C., 146.)

The Act of May 3d, 1860, § 2 (P. L., 1860, p. 757), under which the bond was given, is as follows:

" That said ward receiver shall give bond to the city with good and sufficient securities in the sum of ten thousand dollars for the faithful collecting and paying over to the general receiver of taxes all money so received, accompanied by a list of the parties so paying the amount of valuation, with the amount of city and State taxes so paid opposite to each name, once in every week during the current year for which said tax shall have been levied."

The city claimed before the auditor the balance of $643.10, with interest from May 19th, 1879, the date of the filing of the suggestion and proof of default, to the date of the filing of the auditor's report. This claim was resisted by Charles D. Middleton, a subsequent lien-creditor, and by Castor.

The auditor reported, *inter alia:*

" The questions involved in Waters's Appeal were fully argued before your auditor, and he was invited to the consideration of numerous authorities pro and con, relative to the proposition that an official bond with sureties, taken under an act, but whose conditions are in excess of the requirements of that act, is, *quoad* the excess, void.

" It was further argued on behalf of Mr. Middleton, that § 2d of the Act of May 3d, 1860, provided for a bond to

secure the faithful collecting and paying over of all money received, and that the duty to collect and pay over being founded upon and fixed by the duplicate books furnished to him at the commencement of the first and of the second year of his term, according to sec. 1 of that act, it cannot be assumed that the sureties meant to do more than to bind themselves for the faithful performance of the duties thus defined; that the assumption of further duties, to wit, the entrance upon a subsequent term, was without their knowledge or consent; and finally that the taking of a new bond with other sureties, discharged them, notwithstanding the condition for a continuing liability.

" Mr. Middleton was not a party to Waters's Appeal, and that case is not therefore *res adjudicata* as to him. Yet your auditor entertains no doubt that it is his duty to follow that decision, in so far as it may affect the question before him. With this view, he directed his attention to an inquiry as to whether there is any distinction between the status of principals and sureties, so as to induce a difference in their liability on this bond. . . . .

" Without quoting at large from these decisions, it may be said to be perfectly well settled by them, that the responsibilities of principals and surety on a bond are not to be distinguished.

" Reverting to the facts of this cause, it is to be observed, that the intention of all three of the obligors to assume a liability during continuance of the principal in office in any subsequent term, appears in the most clear and unambiguous language upon the face of the instrument; that the denial of illegality in this condition by the final decree in Waters's Appeal must affect all parties to it; and that there is not a scintilla of evidence before your auditor to show duress, fraud, or mistake before the execution of the instrument by the sureties, or their discharge thereafter, unless it be the taking of a new bond with new sureties at the commencement of the ensuing term.

" But the city took the fund in Waters's Appeal, not by virtue of a judgment obtained against the principal for money embezzled, but by virtue of the judgment on the official bond whose validity, as to the sureties, is now denied.

" If the giving of a new bond for the third term could discharge the sureties on the bond for the second term, why would it not have had the same effect on the principal? But that the judgment on the bond for the second term was valid, at least as to the principal, was decided in Waters's Appeal.

" No decision has been called to the attention of the auditor, nor has he been able to find any one to sustain the proposi-

[Castor's Appeal.]

tion that, on the renewal of office by the principal, the taking of a new bond with new sureties will not discharge his own liability on the old bond, but will discharge that of the old sureties, although the condition be for continuing liability.

" Your auditor, although reluctantly in view of the facts, does not feel justified in making such a decision.

" Therefore, under the law of principal and surety, as cited and understood by your auditor, and under Waters's Appeal, he cannot believe that, had the fund in that case been produced by the property of one of the sureties instead of by that of the principal, the final decree would have been otherwise. The opinion that the result would have been the same is in the mind of the auditor the logical deduction from the law quoted; and, however strong the argument that the city could not have intended to take sureties in arithmetical progression for every succeeding term of the same officer, he considers himself bound to sustain the validity of the judgment of March 10th, 1875, as against the surety, Peter Castor.

"The liability to pay interest on the judgment when such addition to the principal sum found due would produce an excess of the limit of $10,000, defined in the bond, was disputed on the ground that under no circumstances could anything be recoverable exceeding that sum.

" It is true that the limit of liability is fixed by the bond, but when that liability matures, as it does upon the suggestion of breach and proof of default, the relation of debtor and creditor is at once raised between the surety and obligee. And it becomes his duty to pay the latter, the amount not exceeding the limit found due. The auditor is of the opinion that interest is to be paid by the surety upon this amount from the date of the withholding of it. The obligation to pay interest is founded, not upon the contract, but upon the principle of law, which exacts compensation to a creditor for the unjust delay in paying him after the liability is ascertained."

The auditor awarded to the city its claim of $643.10 with interest, and the balance to the Middleton judgment.

Exceptions were filed to this award. The Court below dismissed the exceptions and confirmed the report of the auditor.

Castor then appealed, assigning as errors the dismissal of the exceptions and the confirmation of the report.

*John Shallcross, Edward R. Worrell,* and *F. Carroll Brewster,* for the appellant.

Waters's Appeal, 10 W. N. C., 146, is not an authority against the appellant.

[Castor's Appeal.]

The appellant's equities as a surety are that there was no default during the second term for which he was a surety; that the bond which he entered was superseded by the bond for the third term; and that the city did not accept the bond for the second term as a continuing liability of the sureties therein, but required for the third term a new bond.

It is not pretended that the bond for the third term was concurrrent with the bond for the second; it was *a new contract with the principal, inconsistent with the former contract*, as far as it related to the sureties.

The city had no right to demand a concurrent security; it could demand what was demanded and given, a new bond for the new term.

Although the construction of the bond for the second term would import a continuing liability, the liability was not created unless the city *accepted* the bond for that purpose, and was estopped from asking a further or other bond.

The city did not accept the nominal undertaking of the sureties on the second bond, but took that bond only as a security against a default in the second term, and sought and received another bond with new sureties, specified to be a security for the third term.

If the third bond did not supersede the second, if it was not as it is specified, the security for the third term, but was a concurrent security, the legal result would be that the sureties for the third term who have paid the penalty of their bond, can now enforce contribution from the sureties for the preceding term, during which there was no default.

Shallcross was not elected for his third term, but was appointed.

It was the spirit and intendment of the Act of April 21st, 1846, if not its very words, that there shall not be two bonds or double sureties for one official term.

Where a bond is given for the faithful performance of the duties of an office, the term of which is clearly limited in time, the bond will be limited to the term of the office: Lord Arlington *v.* Merricke, 2 Saunders, 411; Liverpool W. Co. *v.* Harpley, 6 East, 507; Commonwealth *v.* Baynton, 4 Dallas, 282; Moore *v.* Potter, 12 A. L. R., N. S., 764.

Where an officer has been reappointed and qualified by giving bond, the new bond supersedes the old one, and all liability on it ceases: United States *v.* Kirkpatrick, 9 Wharton, 720; United States *v.* Eckford, 1 Howard, 250; Sparks *v.* The Bank, 9 A. L. R., N. S., 365; United States *v.* Wardwell, 5 Mason, 82; United States *v.* Maurice, 2 Brock., 96.

[Castor's Appeal.]

*Francis A. Osbourne, C. E. Morgan, Jr.,* and *William Nelson West,* for the appellee.

As to the measure of liability upon a bond there is no distinction to be drawn between a principal and a surety ; the rule of construction to be applied to it is the same against both. This rule may be stated thus as to official bonds : Where the bond is voluntary, and the intention to be bound in a manner or for a period in excess of the statutory requirements is plain and unmistakable, the obligation will be enforced to the full extent of its terms against both principal and surety. Nothing less than a positive statutory prohibition will relieve either of said obligors therefrom. The bond upon which the appellee's judgment was entered was voluntary, and the intention to be bound for a period in excess of the statutory requirement is clear. It is equally clear that there is no statutory prohibition against the giving or acceptance of such a bond.

It must, therefore, be enforced according to its terms. See Chelmsford Co. *v.* Demarest, 7 Gray, 4 ; Dover *v.* Twombly, 42 N. H., 67 ; Hoboken *v.* Harrison, 1 Vroom, 79 ; Woolwich *v.* Forrest, Pennington (N. J.), p. 84 ; Augero *v.* Keen, 1 Meeson & Welsby, 390 ; United States *v.* Hodson, 10 Wallace, 395 ; Commonwealth *v.* Wolbert, 6 Binney, 292 ; Bank *v.* Cresson, 12 S. & R., 306 ; Waters's Appeal, 10 W. N. C., 146-7.

The Act of 21st April, 1846, only applies to bonds directed to be given by statute, and not to an obligation voluntarily given, whereby a liability is incurred in excess of the statutory requirement.

Under the Act of 1846 the city could not have compelled Shallcross to give a new bond similar to the voluntary obligation which was in excess of the demands of the statute, because of the insolvency of one of the sureties in that originally given.

The mere acceptance of a new bond by the city did not of itself limit the term of the old bond, or discharge either principal or surety thereon. See Gregory *v.* Thomas, 20 Wendell, 17 ; Hamilton's Executors *v.* Callander's Executors, 1 Dallas, 443.

APRIL 17TH, 1882.—PER CURIAM : When it was decided by this Court, in Waters's Appeal, 10 Weekly Notes of Cases, 146, that such a condition as the one set forth in this bond was valid, so as to bind the principal, it necessarily followed that the sureties were also bound. It remained in the custody of the city, and the acceptance of the new bond and

[Duffee *v.* Records.]

sureties could not have the effect of discharging the sureties.

Decree affirmed and appeal dismissed at the cost of the appellants.